## DECEMBER TERM, 1843.

ANN EMILY WARREN, by her next friend, *v.* PHILIP R. HALEY, *et al.*

S., by deed of gift, conveyed to F. certain negroes, in these words, " in trust for the use and benefit of my daughter Ann, and her lawful heirs ;" " in trust for the proper use and benefit of the said Ann, and her heirs forever;" *held*, that these words conveyed to the daughter an estate for her sole, separate use, and that, during her life, it was not subject to the debts of the husband.

The words " lawful heirs," and " her heirs forever," in a deed, are words of limitation of the estate to the donee, and not words of purchase for the heirs.

Where personal property is conveyed to the wife and her heirs, for her sole and separate use, and she dies, the husband surviving is entitled to the property, *jure mariti*, in preference to her next of kin.

THE bill in this case was filed by the complainant, to enjoin an execution upon a judgment at law, which had been levied upon some negroes, as the property of Jeremiah B. Warren, and which were claimed by the complainant, who was an infant, and exhibited her bill by *prochein ami.* The title, by which the complainant claimed, will be found stated at length in the opinion delivered in the case.

The defendant, Thomas Freeland, was a near relative of the present Chancellor, and he was, therefore, unable to sit in the trial of the case. Judge Robert Hughes was selected by the parties to preside in his stead.

*George S. Yerger*, for defendant, in the demurrer.

The only question in this case is, whether the deed of trust or gift, set forth in the bill, conveys the property to the separate use of the wife. The words used are, " in trust for the use and benefit of my daughter, Ann, and her lawful heirs;" and afterwards, the deed concludes, " to hold the same to the proper use and benefit of said Ann." The bill avers, that the husband has had possession of the property, &c.

1. The deed vests the property in the husband. Clancy on Rights, 442, 443; *Duncan and Wife* v. *Martin*, 7 Yerger, 520; *Harper*

**v. *Coulter*,** 2 Porter, 463; 3 How. Rep. 396 ; — unless the words, "for her use and benefit," give to her a separate estate.

2. The appointment or conveyance of property to a trustee, will not make it separate property, unless the language of the deed gives it, and this language must be clear, express, and unequivocal. Clancy, 264; *Lund* v. *Mills*, 5 Ves. 511; Clancy, 262; 2 Story's Eq. 610.

3. It is settled, that the words, " to the proper use and benefit of the wife," do not give separate property. 2 Story's Eq. 610, and cases cited in notes; *Pulchard* v. *Ames*, Turner and Russell, 222; *Tyler* v. *Luke*, 2 Russell and Mylne, 183; ib. 4 Simon's Rep. 144; *Kensington* v. *Dolland*, 2 Mylne and Keen, 184.

If the words, " to be at her disposal," had been added, this would have been sufficient, because she could not dispose of it without it was separate property. Clancy, 263.

2. If there was a separate estate in the slaves, they vested in the husband on the wife's death. 7 Johns. Ch. Rep. 229, *Stewart* v. *Stewart* ; 3 How. Rep. 324, *Tourney* v. *Sinclair.*

*John J. Guion*, for complainant.

The bill in this case is filed by Ann Emily Warren, by her next friend and guardian, James Warren, to enjoin an execution in favor of the defendant, levying upon a number of slaves, which the complainant claims title to, as the heir of her aunt, Mrs. Joanna B. Warren, deceased. The bill sets forth the fact, that the slaves in question were conveyed by her grandfather, to Thomas Freeland, as trustee of her aunt, Mrs. J. Warren and her heirs; that said Freeland has refused to act as trustee, and, being president of said bank, has directed the levy made in this case, and prays the appointment of a trustee, &c. To this bill there is a general demurrer; and the question for the decision of the Court is, whether the conveyance of John Snodgrass, the grandfather of complainant, of the slaves in question, to Thomas Freeland, for the use of her and her heirs, vested in J. B. Warren, her husband, the absolute title to the property, so as to subject them to execution, for the payment of his debts.

By the complainant it is contended, that the conveyance vested

Warren *v.* Haley, et al.

in Freeland the title to the slaves for the use of Mrs. Warren, during her life, free and exempt from any right of property in her husband; and that, as sole heir of Mrs. Warren, she is entitled to the property; and, in support of this position, we rely on the following authorities, &c. We contend that the intention of the grantor must prevail, if that intention can be reasonably ascertained from the deed. This principle will not be denied. The grant, it is true, is for the use of Mrs. Warren and her heirs, without any other words of limitation, and it will doubtless be contended by the defendant, that the word *heirs,* is a word of purchase, and not of limitation of the estate to any particular person or object ; but we think this view, although a fair construction of a deed to one and his heirs, without words of limitation, under ordinary circumstances, would not apply to this case, in which the father has certainly evinced the intention to convey a separate estate in the property to his daughter, by the intervention of a trustee, in whom he has vested the legal title, for the express purpose, if he had any purpose at all, of preventing the husband from disposing of the property. *Johnson, et al.* v. *Thompson,* 4 Desaus. Eq. R. 458; *Tucker* v. *The Executors of Sterms,* 4 Desaus. 532. See also 1 Bing. Rep. 453, where it is held, that the words, "heirs of the body," are held to be words of limitation, and not of purchase; and that the generality of the terms used in a deed will always be restrained for the benefit of children, when the conveyance of property is made with a view to a marriage, or for the benefit of the issue of such marriage — and the authorities cited in the notes. See also 6 Munf. 132 and 581. See also 2 Hawks, case of *Tyson* v. *Tyson.*

For the contrary doctrine, that the conveyance was absolute, and vested the property in Warren, the husband, absolutely, the defendant relies upon the following authorities : — 2 Story's Eq. 610, and notes; *Pulchard* v. *Ames,* Turner and Russell, 222, &c. &c. But, I apprehend, that, upon a strict examination of these authorities, they do not fully sustain the position assumed in this case, but only establish the general principle, that the words, " to the use of her and her heirs," in a deed, without any thing else to control or limit the intention of the grantor, would be construed into an absolute grant; but in this case we have the fact, that the property was conveyed

to a trustee, and the legal title absolutely vested in him; and, if any thing can be inferred from that fact, it is clearly in support of the position, that it was the intention of the grantor to prevent the husband from exercising any ownership over the property, and subjecting it to the payment of his debts; and if this inference is a legal and proper one, to show the intention of the grantor, equity will give it its full force, in favor of the rights of the grantee and her heirs, in opposition to the husband, and those claiming under him.

*Robert Hughes*, special chancellor.

The complainant filed her bill claiming to be heir of her aunt, Ann Warren, and entitled to the negroes in the bill mentioned under the following bill of sale, or deed of gift, to wit :

" Know all men, that I, John Snodgrass of Claiborne county, and State of Mississippi, for and in ·consideration of the natural love and affection I bear for my daughter Ann, have given, granted, and delivered, and by these presents, do give, grant, and deliver, unto Thomas Freeland of Claiborne county, and State of Mississippi, in trust, for the use and benefit of my daughter, Ann, and her lawful heirs, the following described negroes, to wit, &c. To have and to hold the said negroes, to the said Thomas Freeland, in trust, for the proper use and benefit of the said Ann, and her heirs forever, &c." The negroes were delivered to Jeremiah B. Warren, at the time husband of said Ann, and by him placed on a plantation in Warren county, held by him, where they remained ; Ann the wife, departed this life without issue, and complainant is the only heir of said Ann. The said Jeremiah B. Warren is yet living — judgment obtained against said Jeremiah B. Warren, execution upon which levied on the negroes mentioned in the deed of gift, or some of them. Freeland refuses to execute the trust. The bill prayed for injunction to sale under the judgment, which was granted. There is a demurrer to the bill.

The only question for my determination is, whether the negroes belong to Jeremiah B. Warren, or the complainant. If they are held by Freeland, in trust, for the complainant, they are not subject to the execution levied upon them, but, if the use is in Jeremiah B. Warren, then they are so subject, and the demurrer should be allowed.

The question is argued on paper by counsel, and it is insisted upon the one side that, by the deed, the negroes in contest are limited to the sole and exclusive use of Mrs. Ann Warren, by the deed of gift, and, consequently, they are not subject to the disposition or control of, or liable to pay the debts of, Jeremiah B. Warren; while on the other hand it is insisted, that the deed of gift gave a use absolutely to Mrs. Warren, which was immediately *jure mariti* vested in her husband, and, consequently, he is entitled to control them, and they are liable under execution to pay his debts. I do not concur with counsel on either side on this point. I have looked into the authorities cited by both counsel, and, with all. due deference to their greater ability, I do not see how the question which is made can arise in this case ; were Mrs. Ann Warren yet living, and there was a contest between her and the creditors of her husband, then the question would arise, and in that event I am inclined to believe, after a full examination of all the cases, I would be of the opinion, that the deed of gift intended to and did secure to Mrs. Warren an estate for her sole, separate use, and that during her life her husband could not take it, and consequently the creditors of the husband would not be entitled.

The question, however, is presented in an entirely different view. Here an heir, not a child, or the issue of the beneficiary under the deed of gift, is raising the question, and upon her bill the question will have to be decided, as if it was a question between her and the creditors of Jeremiah B. Warren. How, then, would it be in a contest between the complainant and Jeremiah B. Warren ? Which would be entitled to the property ? These questions are to be answered by an examination of the deed of gift, and by an application of the rules of law to it. The negroes are granted to " Thomas Freeland, in trust, for the use and benefit of my daughter Ann, and her lawful heirs. To have and to hold for the use and benefit of the said Ann, and her heirs forever." Now, what estate in the property is created by these words ? The legal estate is vested in Freeland, and an use in fee is created in Ann. The words *lawful heirs, and her heirs forever*, are used in the deed, to show the estate intended to be vested in Ann ; they were used as words of limitation of the estate to the donee, and not as words of

purchase for the heirs.     See Reeves's Domestic Relations, 455, *et seq.*

I think the intention of the donor is evident ; he intended, that his daughter should have a fee in the use, and that for her separate use during her life, but here the intention stops ; after her death, the law steps in and disposes of the fee.     In ordinary cases, the next of kin, being such as would inherit real estate, are entitled.     But between wife deceased, and husband surviving, the rule as to next of kin does not apply.     The husband surviving is entitled to the chattels of his wife, not as next of kin, but *jure mariti*.     See *Lowry* v. *Huston*, 3 How. 394, *et seq.*

The husband, Jeremiah B. Warren, therefore, upon the death of his wife, Ann, who was the donee, was entitled to the negroes in contest, and of course they are subject to execution to pay his debts.

The demurrer is allowed, the injunction dissolved, and the bill dismissed.